UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

ROGER A. MANN, ADMINISTRATOR
OF THE ESTATE OF TANYA DIANE MANN,
Deceased,

    Plaintiff,

v.

C.H. ROBINSON WORLDWIDE, INC.;
C.H. ROBINSON COMPANY;
C.H. ROBINSON COMPANY, INC.; and
C.H. ROBINSON INTERNATIONAL, INC.,

    Defendants.

Civil Action No. 7:16cv102
**JURY TRIAL DEMANDED**

SERVE:

# COMPLAINT

Plaintiff Roger A. Mann, Administrator of the Estate of Tanya Diane Mann, Deceased ("Plaintiff") (Plaintiff's decedent is referred to herein as "Mrs. Mann"), by counsel, move this Court for judgment jointly and severally against Defendants C.H. Robinson Worldwide, Inc., C.H. Robinson Company, C.H. Robinson Company, Inc., and C.H. Robinson International, Inc. (collectively referred to hereinafter as "Defendants" or "C.H. Robinson"), and in support of their Complaint, state as follows:

## Jurisdiction and Venue

1.     This Complaint asserts claims pursuant to Virginia's wrongful-death statute.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000.00 and is between citizens of different States.

3. Venue is proper pursuant to 28 U.S.C § 1391(a) because the wreck giving rise to the claims asserted herein occurred in Wythe County, Virginia, which lies within this Court's judicial district and division.

**Parties**

4. Mrs. Mann, a resident of the State of North Carolina, died intestate on April 1, 2014.

5. On May 8, 2014, Mrs. Mann's husband, Roger A. Mann, was issued an Affidavit by The General Court of Justice, Superior Court Division, Henderson County, North Carolina appointing him as Administrator of the Estate of Tanya Diane Mann.

6. On November 18, 2014, Roger A. Mann was duly appointed by the Circuit Court of the County of Wythe, Virginia as the Administrator of the Estate of Tanya Diane Mann, Deceased, for purposes of a wrongful death or personal injury suit.

7. Defendants are foreign corporations or entities with their principle places of business in the State of Minnesota, with one or more of such entities having offices located in Norfolk, Virginia, Richmond, Virginia, and Roanoke, Virginia.

**Factual Allegations**

8. At all times relevant, Defendants acted through their employees or agents who were acting within the scope of their employment or agency with Defendants.

9.     On or about April 1, 2014 at approximately 3:00-3:15 a.m., Mr. Phil Emiabata was operating a tractor trailer truck northbound on U.S. Interstate 81 ("I-81") in the County of Wythe, Virginia.  The truck was owned by Mr. Phil Emiabata and Mrs. Sylvia Emiabata (a/k/a Phil Emia and Sylvia Emia) d/b/a Nova Express (the "Nova Express truck").

10.     At the same time and place, as a result of negligent maintenance of the Nova Express tractor and trailer, the brakes on both were dangerously out of adjustment, the trailer's suspension was in dangerous disrepair, and the tires on the tractor and trailer were dangerously worn. Such negligent maintenance of the Nova Express truck was consistent with Nova Express' long history of non-compliance with the vehicle maintenance requirements under the Federal Motor Carrier Safety Regulations ("FMCSRs").

11.     At about the same time and place, Mr. Emiabata had driven the Nova Express truck in excess of the maximum hours allowed under the FMCSRs and was driving fatigued and/or fell asleep while driving.  While traveling on a straight, dry grade of marked highway, Mr. Emiabata failed to maintain control of the Nova Express truck, driving off the roadway and into the median. Mr. Emiabata failed to regain control of his tractor-trailer and was unable to slow it down, causing his tractor-trailer to strike the guardrail for the northbound lane, cross the median of the interstate and through the guardrail for the southbound lane.  The dark blue cab of the Nova Express truck came to rest on its passenger side with its lights off, blocking the left southbound travel lane of I-81.  A section of torn up metal guardrail came to rest across the left northbound travel lane of I-81.

12. A few minutes after Mr. Emiabata crashed his truck through the guardrail for I-81 South, a southbound vehicle operated by Mrs. Mann slammed into Mr. Emiabata's overturned cab. Mrs. Mann was killed as a result of the crash.

13. At about the same place where Mr. Emiabata crashed through the guardrail for I-81 North and approximately five to ten minutes after Mrs. Mann's fatal crash in the southbound lane, a driver was operating a tractor-trailer truck in the left northbound lane of I-81. The driver's truck struck a piece of the guardrail that was blocking the roadway causing him to run off the road and crash. After the crash, the driver's truck engulfed in flames, he was burned to death in his cab, and his passenger was badly burned and injured.

14. At the time that Mr. Emiabata negligently and/or willfully, wantonly and recklessly wrecked the Nova Express truck causing the fatal crash in the southbound lane of I-81 and the wreck in the northbound lane of I-81 which took the life of Mrs. Mann, he was hauling approximately 37,936 pounds of laundry detergent. The load of laundry detergent had been picked up by Mr. Emiabata on or about March 28, 2014 at a warehouse in Laredo, Texas and was scheduled to be delivered to Jetro Cash & Carry in Bronx, New York on April 1, 2014 pursuant to the contract carrier agreement and/or broker agreement between Phil Emia and Sylvia Emia d/b/a Nova Express and CH Robinson.

15. At all relevant times, CH Robinson knew or should have known that Phil Emia and Sylvia Emia d/b/a Nova Express had a long history of violating the FMCSRs designed to promote safe driving and reduce or prevent wrecks, injuries and fatalities involving tractor-trailer trucks. CH Robinson knew or should have known that Nova Express was an unfit and unsafe motor carrier at the time CH Robinson hired it to haul almost 38,000 pounds of powdered detergent from Laredo, Texas to New York City.

16. Prior to CH Robinson hiring Nova Express to haul the powdered laundry detergent on or about March 28, 2014, there was substantial information readily available to CH Robinson to indicate that Nova Express was an unfit and unsafe motor carrier. At all relevant times, information regarding the fitness of Nova Express was readily available on the Internet, including data from the Department of Transportation's ("DOT") Safety Measurement System ("SMS") and Motor Carrier Safety Profile for Nova Express. Such information that was readily available to CH Robinson included, but was not limited to, reports showing the following relative to Phil Emia and Sylvia Emia d/b/a Nova Express (a carrier who operated with one to two trucks and drivers at any given time): (1) Two prior "involuntary revocations" of the company's operating authority; (2) Two prior wrecks in May of 2013; (3) A history of out of service violations for filing false log reports, driving with a suspended CDL, overly worn tires, and failure to have a periodic maintenance inspection; and (4) a history of citations for inoperative and inadequate brakes as well as inadequate tire tread depth. The Motor Carrier Safety Profile for Nova Express was readily available to CH Robinson online prior to March 28, 2014, and showed that for every month from November 2011 through March 2014 Nova Express ranked as one of the worst motor carriers under the vehicle maintenance safety category (ranging from the bottom .3 to 7.5 percentile). During the same time frame (November 2011 through March 2014) there were seven months in which Nova Express ranked as one of the worst motor carriers for fatigued driving violations (ranging from the bottom 13.5 to 23.5 percentile) and for the 10 month period from June 2013 through March 2014 Nova Express ranked as one of the worst motor carriers under the category of unsafe driving (ranging from the bottom 3.9 to 9.3 percentile).

17. As a direct and proximate result of CH Robinson negligently and/or wantonly, willfully, and recklessly hiring Phil and Sylvia Emiabata d/b/a Nova Express, an unfit and unsafe motor carrier with a history of noncompliance with the minimum safety standards established by the Federal Motor Carrier Safety Administration, Mrs. Mann died as due to a crash caused by Mr. Emiabata while making a haul for CH Robinson.

18. CH Robinson hired, by and through a contract carrier agreement and/or broker agreement and/or contract addendum, Phil and Sylvia Emia (a/k/a Emiabata) d/b/a Nova Express to transport freight on its behalf. CH Robinson, a sophisticated motor carrier broker and/or third party logistics provider, knew or should have known that the Emiabatas d/b/a Nova Express had a long history of noncompliance with the FMCSRs as indicated by the motor carrier safety and performance data maintained by the U.S. Department of Transportation, and were otherwise unsuited and unfit to operate safely as required by the FMCSRs.

19. CH Robinson had a duty to exercise ordinary care not to hire or retain a trucking company that CH Robinson knew or should have known posed a risk of harm to others and which was otherwise not competent or fit to perform the duties of an interstate commerce carrier. CH Robinson had a duty to investigate the fitness of Phil and Sylvia Emia d/b/a Nova Express prior to hiring said carrier to carry a load on public highways. CH Robinson, a sophisticated motor carrier broker and/or third party logistics provider, knew or should have known that Phil and Sylvia Emia d/b/a Nova Express had a poor history of compliance with the minimum safety standards required by the FMCSRs and were otherwise unsuited and unfit to operate safely. Motor carrier safety and performance data for Phil and Sylvia Emia d/b/a Nova Express was readily available to CH Robinson via a quick search conducted on the internet. A sophisticated motor carrier broker and/or third party logistics provider such as CH Robinson, would have

known, or should not have ignored, such facts and indications of the Emiabatas'/Nova Express' unfitness for the duties of an interstate commercial carrier.

20. CH Robinson negligently and/or willfully, wantonly and recklessly breached the duty of care which it owed to the motoring public, including Mrs. Mann, by hiring and/or retaining Phil and Sylvia Emia (a/k/a Emiabata) d/b/a Nova Express when CH Robinson either knew or should have known that said carrier posed a risk of harm to others and was otherwise incompetent and unfit to perform the duties of an interstate commerce carrier, or intentionally chose not to know.

21. As a direct and proximate result of the actions and omissions of CH Robinson, on April 1, 2014 a dangerously unsafe Nova Express truck and trailer operated by a dangerously unsafe driver, Mr. Emiabata, traveled through Wythe County, Virginia northbound on I-81, and was involved in a wreck which was directly attributable to multiple violations of the FMCSRs being committed by Mr. Emiabata at said time. The wreck resulting from Mr. Emiabata's operation of the Nova Express truck in violation of the FMCSRs caused two additional fatal wrecks, as described herein above, including the fatal wreck of Mrs. Mann.

22. As a direct and proximate result of the negligent actions and omissions of the Defendants, Mrs. Mann died, and her surviving beneficiaries have suffered, and will continue to suffer, sorrow, mental anguish, and loss of solace, including the loss of Mrs. Mann's society, companionship, comfort, guidance, kindly offices and advice; loss of Mrs. Mann's services, protection, care, and assistance; and funeral expenses.

23. As a direct and proximate result of the willful, wanton, and reckless conduct of Defendants, which was so reckless as to evince a conscious disregard for the safety of others, Mrs. Mann died and her beneficiaries suffered damages.

WHEREFORE, Plaintiffs pray for judgment and an award of execution against all Defendants, jointly and severally, in the sum of Ten Million Dollars ($10,000,000.00), for wrongful death compensatory damages and Five Hundred Thousand Dollars ($500,000.00) for punitive damages, together with all applicable interest, costs, and attorneys' fees.

**TRIAL BY JURY IS DEMANDED.**

ROGER A. MANN, ADMINISTRATOR OF THE
ESTATE OF TANYA DIANE MANN, DECEASED

By: \_\_\_\_/s/_____
Michael G. Phelan, Esq. (VSB No. 29725)
Phelan Krudys Petty, PLC
6641 West Broad Street
Suite 406
Richmond, Virginia 23230
Telephone: (804) 980-7100
Facsimile: (804)767-4601
E-Mail: mphelan@pkpfirm.com

James C. King, Esq.
King, Wiley & Williams
P.O. Box 1688
Jasper, Alabama 35502
Telephone: (205) 221-3500
Facsimile: (205) 221-3581
E-Mail: jimmy@jasperlawyers.com

*Counsel for Plaintiff*